```
              IN THE UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF ARKANSAS
                     FAYETTEVILLE DIVISION
```

**YORAM RAZ**                                                    **PLAINTIFF**

       v.              Civil No. 02-5184

**ROBERT MUELLER, FBI DIRECTOR**                                 **DEFENDANT**

       and

**YORAM RAZ**                                                    **PLAINTIFF**

       v.

**UNITED STATES**                                                **DEFENDANT**

## O R D E R

Now on this 2nd day of September, 2005, come on for consideration the following motions:

* plaintiff's **Rule 59(a) Motion For New Trial Showing Newly Discovered Evidence** (document #224);

* plaintiff's **Motion To Reconsider Default Judgment For Failing To Disclose 28 FBI Investigation Files And For Default Judgment For Subsequent Cover-up** (document #225);

* plaintiff's **Motion For In-Camera Review Of Meaning Of Classification 203 - In Conjunction With Pending Motion For Default Judgment** (document #234), and

* plaintiff's **Motion For In-Camera Review Of Six FBI Files In Connection With Motion For Default Judgment** (document #240),

and from said motions, and the responses thereto, the Court finds and orders as follows:

1. The claims of plaintiff Yoram Raz (Raz) in these consolidated cases, having to do with his allegations that the FBI subjected him to unwarranted surveillance lasting from 1987 to the present date, were tried to the Court from July 18-21, 2005. At the conclusion of trial, the matter was taken under advisement, and the Court is this date issuing a Memorandum Opinion and Judgment. Its rulings on the pending motions should be read in conjunction with those decisions.

2. Discovery was extensive in this case, spanning a period of time from February, 2004, until July, 2005. Several disputes arose during the discovery process, in part because many of the documents Raz sought to have produced were classified.

The Court conducted several *in camera* reviews to determine whether particular documents should be released, and on one occasion had an *in camera* review conducted by the Magistrate Judge, in order to resolve these disputes.

3. During the discovery process, Raz tried repeatedly to convince the Court of the existence of documents he believed were being concealed by defendants. He studied the various documents which were produced in great detail, and identified what he believed to be several discrepancies in the documents and in the explanations given about the documents by defendants. Raz

repeatedly called the attention of the Court to these discrepancies, and suggested that they were evidence of fraud and a "cover-up" on the part of the defendants.

4. While the Court was not persuaded by Raz's arguments during discovery that the defendants engaged in fraud or in any form of reprehensible conduct with regard to the discrepancies, it did order the defendants to produce additional documents that had not been previously produced.

As might be expected and is frequently the case, neither party was fully satisfied with the Court's various decisions on discovery disputes. As might also be expected, however, the Court believes that it permitted wide and proper latitude to Raz during the discovery process and that his complaints to the contrary are without merit.

5. The motions now under consideration are an attempt to revisit these discovery disputes. They are also an attempt to obtain post-trial discovery concerning discrepancies Raz believes he detected during the trial of his case. For example, Raz contends that during trial he developed testimony from defense witness FBI Special Agent Cindy Alexander which suggests a discrepancy in the documents produced during discovery and the defendants' explanations of those documents.

Based upon this contention, Raz claims that the Court should reopen discovery and review additional documents (and a file

classification number) *in camera*. He suggests that such a review will discredit defense witness Richard O'Connell and, therefore, bear on the Court's credibility determinations in the process of reaching a decision on the issues in this case. Presumably, if he were permitted to do so, Raz would want to re-try the case based upon what he now seeks to discover.

Raz also suggests that the Court should revisit its ruling denying him a default judgment -- which he sought on the basis that the defendants failed to produce (or reveal the existence of) certain files.

6. Raz's arguments on these motions are not persuasive. The Court did not restrict discovery in this matter, and in fact allowed expansive discovery. It granted continuances, extended discovery deadlines, and relaxed discovery limits so that more discovery could be accomplished. It conducted numerous *in camera* document reviews. No information that was developed during the extensive discovery process persuaded the Court that defendants were involved in a cover-up of clandestine activities or documents related to same.

7. The testimony of the witness Alexander likewise is not persuasive evidence of any cover-up. The key point in Raz's argument appears to be his contention that Alexander put the lie to the defendants' assertion that all relevant files had been produced (or identified as privileged) during discovery.

Alexander's testimony that she cross-checked all the files and believed that they all pertained to Raz is not as unequivocal as Raz suggests. Alexander testified that she did "the very best I can with the information provided to me." She was, however, working on a very short time frame and, according to defendants' brief on the subject, was not able to view the text of all documents on the computer system available to her at that time. She also testified that not all the files "focused" on Raz - in some he was just "referenced."

Defendants represent to the Court, in their brief on the issue, that it can be discerned from the text of two of the documents in question, that they do not pertain to Raz, although Alexander included them in her list and believed that they did so pertain. This representation is consistent with Alexander's testimony that some of the files just "referenced" Raz.

The Court finds defendants' explanation credible. It is not clear from Alexander's testimony that every document she reviewed included either Raz's birth date or his social security number, and a review of the various types of FBI documentation introduced into evidence at trial reflects that not every such document contains the birth date and/or social security number of every person mentioned therein. Furthermore, although Raz claims his name is extremely rare and unusual -- and that, to his knowledge only one other person in the world has that name -- defendants

introduced an exhibit at trial which contained a report to the effect that the Immigration and Naturalization Service, in November 25, 1987, located files on three different people named Yoram Raz who had visited the United States at that point in time.

The Court thus concludes that Alexander could well have included documents in her reference list that turned out, upon inspection of the text, not to pertain to Raz.

8. Finally, the Court believes that even if the documents referred to by Alexander but not produced during discovery do pertain to Raz, their production would not alter the outcome of this case.

As set forth in the Court's Memorandum Opinion being entered of even date herewith, while Raz proved that the FBI conducted several investigations involving him, he fell far short of proving the type of constant and intense surveillance he has alleged.

He has also failed to offer even a scintilla of evidence that any conduct of the FBI was motivated by his political opinions or beliefs, and his heightened suspicion that defendants are hiding documents receives no support in the text of the many documents actually produced.

What the evidence does show is several discrete and minimal investigations of Raz, each justified either by information offered by sources to FBI Agents, by Raz's conduct, or both, all as set forth in the Court's Memorandum Opinion filed this date.

8. For all the foregoing reasons, the Court declines to reopen discovery; to revisit pretrial rulings; or to permit "discovery" concerning proof presented at the trial of this cause. Accordingly, the pending motions should and will be denied.

**IT IS THEREFORE ORDERED** that plaintiff's **Rule 59(a) Motion For New Trial Showing Newly Discovered Evidence** (document #224) is **denied**.

**IT IS FURTHER ORDERED** that plaintiff's **Motion To Reconsider Default Judgment For Failing To Disclose 28 FBI Investigation Files And For Default Judgment For Subsequent Cover-up** (document #225) is **denied**.

**IT IS FURTHER ORDERED** that plaintiff's **Motion For In-Camera Review Of Meaning Of Classification 203 - In Conjunction With Pending Motion For Default Judgment** (document #234) is **denied**.

**IT IS FURTHER ORDERED** that plaintiff's **Motion For In-Camera Review Of Six FBI Files In Connection With Motion For Default Judgment** (document #240) is **denied**.

**IT IS SO ORDERED.**

 **/s/ Jimm Larry Hendren**
 **JIMM LARRY HENDREN**
 **UNITED STATES DISTRICT JUDGE**